UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
RICHARD W. NAGEL
CLERK OF COURT

2022 MAR 31 AM 11: 57

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>**ALEXIS GEORGE (1)**<br>   also known as "Lex"<br><br>**LARRY ROWE (2)**<br>   also known as "Black"<br><br>**JERMAINE HOWARD (3)**<br><br>**MARTEZ JACKSON (4)** | CASE NO. 2:22 CR 049<br><br>JUDGE Judge Watson<br><br>**INDICTMENT**<br><br>18 U.S.C. § 2<br>18 U.S.C. § 1343<br>18 U.S.C. § 1349<br><br>**FORFEITURE ALLEGATIONS** |

**THE GRAND JURY CHARGES:**

<u>Introductory Allegations</u>

At all times relevant to this Indictment:

*The Defendants and Their Co-Conspirators*

1. **ALEXIS GEORGE, aka "Lex"** ("**GEORGE**"), was an individual residing in the State of Ohio who claimed ownership of various businesses and/or corporations, including National Ambulance & Medical Billing LLC and Guardian Angel Home Health LLC, which were Ohio corporations, as well as Lex Luxuries Beauty.

2. **LARRY ROWE, aka "Black"** ("**ROWE**"), was an individual residing in the State of Ohio who claimed ownership of Buckeye One Stop Shop LLC, which was an Ohio corporation.

1

3. **JERMAINE HOWARD** ("**HOWARD**") was an individual residing in multiple states, including the State of Ohio at the time of the submission of forms related to the fraudulent scheme described below, who claimed ownership of J Howard Landscaping.

4. **MARTEZ JACKSON** ("**JACKSON**") was an individual residing in the State of Ohio who claimed ownership of Marty Cleaning Company.

### *The Small Business Administration*

5. The United States Small Business Administration ("SBA") was (and is) an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

6. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

### *The Paycheck Protection Program*

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.

8. One source of relief that the CARES Act provided for was the authorization of billions of dollars in forgivable loans to small businesses for payroll, mortgage interest, rent/lease, and utilities, through a program referred to as the Paycheck Protection Program

("PPP"). In or around April 2020, Congress authorized billions of dollars in additional PPP funding.

9. The PPP allowed qualifying small businesses and other organizations to receive loans. Businesses were required to use PPP loan proceeds on payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a certain percentage of the loan proceeds on payroll expenses.

10. The amount of a PPP loan that a small business might have been entitled to receive was determined by the number of employees employed by the business and the business's average monthly payroll costs.

11. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. One such certification required the applicant business (through its authorized representative) to affirm that it was in operation on February 15, 2020, and that it had employees for whom the applicant business paid salaries and payroll taxes or paid independent contractors. Another such certification required the applicant business (through its authorized representative) to affirm that all proceeds of the PPP loan would be used for business-related purposes, such as to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments. The applicant business (through its authorized

representative) was also required to acknowledge that if the funds are knowingly used for unauthorized purposes, the federal government would be able to hold the authorized representative legally liable, such as for charges of fraud. Also in the PPP loan application, the business (through its authorized representative) had to state, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses. Businesses applying for PPP loans often included additional documentation to verify the veracity of the businesses' operations, including various tax-related documents.

12. The SBA oversees the PPP. However, individual PPP loans were issued by private, approved lenders who received and processed PPP applications and supporting documentation, and then made loans using the lenders' own funds, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

*SBA-Approved Lenders*

13. Financial Institution A was a non-bank financial institution based in Columbus, Ohio. Financial Institution A participated in the PPP as a lender, and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

14. Financial Institution B was a Federal Deposit Insurance Corporation ("FDIC")-insured financial institution based in Ogden, Utah. Financial Institution B participated in the

4

PPP as a lender, and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP. Financial Institution B has a branch in Columbus, Ohio.

15. Financial Institution C was an FDIC-insured financial institution based in Columbus, Ohio. Financial Institution C participated in the PPP as a lender, and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

*Relevant Tax Forms*

16. Internal Revenue Service ("IRS") Forms 940 were forms that employers filed with the IRS to report and ultimately to pay an employer's annual Federal Unemployment Tax. All employers that paid payroll were required to file these forms on an annual basis.

17. IRS Forms 941 were forms that employers filed with the IRS to report wages paid, number of employees, and quarterly income tax, social security tax, and Medicare tax withheld from employees' paychecks. All employers that paid payroll were generally required to file these forms on a quarterly basis.

18. IRS Forms 1040 were used by individuals to file an annual income tax return.

19. IRS Forms Schedule C, which were part of IRS Forms 1040, were for the purpose of reporting business-related profit or loss with regard to sole proprietorships.

20. IRS Forms 1120 were used by corporations to file an annual income tax return.

### COUNT 1
### (Conspiracy to Commit Wire Fraud)

21. Paragraphs 1 through 20 are re-stated and re-alleged as if fully set forth herein.

22. From in or around April 2020 through in or around June 2021, the exact dates being unknown, in the Southern District of Ohio and elsewhere, the Defendants, **ALEXIS GEORGE**, also known as "Lex," **LARRY ROWE**, also known as "Black," **JERMAINE**

**HOWARD,** and **MARTEZ JACKSON**, did knowingly and intentionally conspire and agree with each other, and with others known and unknown to the Grand Jury, to commit wire fraud, that is, to devise and intend to devise a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and material omissions, and for the purpose of executing that scheme, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

### *The Object of the Conspiracy*

23. The object of the conspiracy was to submit false materials, including false PPP loan applications, false IRS Forms, and false bank documentation, to financial institutions in order to obtain PPP loan funding.

### *Manner and Means of the Conspiracy*

24. It was part of the conspiracy that **GEORGE**, along with others known and unknown to the Grand Jury, offered her services to various individuals to submit false PPP loan applications, in exchange for a payment to **GEORGE** for her work.

25. It was further part of the conspiracy that **GEORGE**, and others, submitted false PPP loan applications for fraudulent businesses. This sometimes included business entities that **GEORGE**, and others, had taken preliminary steps to establish, such as by registering the so-called business with the Ohio Secretary of State, and by opening bank accounts in the name of the so-called businesses. Some of the businesses were registered before the PPP came into existence; some after. Either way, **GEORGE**, and others, came to use these businesses in furtherance of the fraud scheme, knowing that a number of these so-called businesses did not

actually engage in any commerce consistent with normal business operations. Examples of these business entities included, among others, National Ambulance & Medical Billing LLC, Lex Luxuries Beauty, Guardian Angel Home Health LLC, Buckeye One Stop Shop LLC, J Howard Landscaping, Marty Cleaning Company, Put On Boyz Entertainment LLC, and Streets Wear LLC.

26. It was further part of the conspiracy that **GEORGE** submitted, and caused to be submitted, PPP loan applications to various financial institutions, including Financial Institution A, Financial Institution B, Financial Institution C, and other SBA-approved PPP lenders, all on behalf of herself and others, including Defendants **ROWE, HOWARD,** and **JACKSON**. These loan applications were false and fraudulent in that they contained materially false statements and were accompanied by fraudulent documents purporting to demonstrate the applying entities' eligibility for the PPP loans.

27. It was further part of the conspiracy that **GEORGE** made, and caused to be made, materially false statements in these PPP loan applications, which statements **GEORGE** knew were false when she made them and caused them to be made. **GEORGE** made these statements, and caused them to be made, in concert with others for whom she was submitting fraudulent PPP loan applications, including Defendants **ROWE, HOWARD,** and **JACKSON.** For example, **GEORGE** and others regularly assembled PPP loan applications that:

   a. Falsely represented the number of employees of the alleged entities seeking PPP funding;

   b. Falsely represented that the funds sought through the PPP loan applications would be used to pay payroll, health care benefits, utilities, and other business

expenses of the applying entities, when in fact **GEORGE** and others knew that the entities did not have any of these business expenses;

c. Included false IRS documents in support of the PPP loan applications, which documents **GEORGE** and others knew were false, including, for example, fabricated IRS Forms 1040 Schedule Cs and fabricated IRS Forms 1120; and

d. Included false bank documents in support of the PPP loan applications, which documents **GEORGE** and others knew were false, including fabricated bank statements for accounts that did not exist, as well as the same fabricated bank statements for numerous PPP loan applications.

28. It was further part of the conspiracy that **GEORGE** offered payment for anyone who referred additional individuals to her who might be willing to conspire with **GEORGE** to submit false PPP loan applications.

29. As a result of and based on **GEORGE's**, **ROWE's**, and **HOWARD's**, and **JACKSON's** materially false representations and certifications and falsified supporting documents, financial institutions issued at least $200,000 in PPP loan money to entities related to the fraudulent scheme.

30. It was further part of the conspiracy that the co-conspirators obtained various PPP loans and, rather than spending the PPP money in a manner consistent with the loan, or with the operation of a business, sometimes spent the PPP money on personal expenditures.

31. Pursuant to the conspiracy, the following fraudulent PPP applications were submitted, resulting in the following PPP loans being disbursed:

8

| DEFENDANT(S) | SUBMISSION | DISTRIBUTION |
|---|---|---|
| **GEORGE** | On or about May 19, 2020, submission of application to Financial Institution C for PPP loan in the name of **National Ambulance & Medical Billing LLC** | On or about May 21, 2020, approximately $3,095 in PPP loan funds was deposited by Financial Institution C to **National Ambulance & Medical Billing LLC** |
| **GEORGE** | On or about February 27, 2021, submission of application to Financial Institution B for PPP loan in the name of **Guardian Angel Home Health LLC** | On or about March 2, 2021, approximately $20,834 in PPP loan funds was deposited by Financial Institution B to **Guardian Angel Home Health LLC** |
| **GEORGE** | On or about April 27, 2021, submission of application to Financial Institution A for PPP loan in the name of **Lex Luxuries Beauty** | On or about May 6, 2021, approximately $20,833 in PPP loan funds was deposited by Financial Institution A to **Alexis GEORGE** in the name of **Lex Luxuries Beauty** |
| **GEORGE ROWE** | On or about March 1, 2021, submission of application to Financial Institution A for PPP loan in the name of **Buckeye One Stop Shop LLC** | On or about March 3, 2021, approximately $35,500 in PPP loan funds was deposited by Financial Institution A to **Buckeye One Stop Shop LLC** |
| **GEORGE, HOWARD** | On or about April 26, 2021, submission of application to Financial Institution A for PPP loan in the name of **J Howard Landscaping** | On or about May 6, 2021, approximately $20,520 in PPP loan funds was deposited by Financial Institution A to **Jermaine HOWARD** in the name of **J Howard Landscaping** |
| **GEORGE, JACKSON** | On or about April 27, 2021, submission of application to Financial Institution A for PPP loan in the name of **Marty Cleaning Company** | On or about May 6, 2021, approximately $20,833 in PPP loan funds was deposited by Financial Institution A to **Martez JACKSON** in the name of **Marty Cleaning Company** |
| **GEORGE** | On or about May 14, 2021, submission of application to Financial Institution A for PPP loan in the name of **Put On Boyz Entertainment LLC** | On or about May 25, 2021, approximately $52,000 in PPP loan funds was deposited by Financial Institution A to **Put On Boyz Entertainment LLC** |

| DEFENDANT(S) | SUBMISSION | DISTRIBUTION |
|---|---|---|
| GEORGE | On or about May 14, 2021, submission of application to Financial Institution A for PPP loan in the name of **Streets Wear LLC** | On or about May 25, 2021, approximately $45,000 in PPP loan funds was deposited by Financial Institution A to **Streets Wear LLC** |

**All in violation of 18 U.S.C. § 1349.**

## COUNTS 2–9
### (Wire Fraud)

32. Paragraphs 1 through 31 are re-stated and re-alleged as if fully set forth herein.

33. On or about the dates set forth in the separate counts below, in the Southern District of Ohio and elsewhere, the Defendants, aided and abetted by each other, and others known and unknown to the Grand Jury, devised and intend to devise a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and material omissions, and for the purpose of executing that scheme, and attempting to do so, transmitted and caused to be transmitted by means of a wire communication in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, namely, the following fraudulent PPP applications in violation of 18 U.S.C. §§ 1343 and 2:

| COUNT | DEFENDANT(S) | APPROX. DATE | WIRE/ACT |
|---|---|---|---|
| 2 | GEORGE | 5/19/2020 | Submission of application to Financial Institution C for PPP loan in the name of **National Ambulance & Medical Billing LLC** |
| 3 | GEORGE | 02/27/2021 | Submission of application to Financial Institution B for PPP loan in the name of **Guardian Angel Home Health LLC** |
| 4 | GEORGE | 04/27/2021 | Submission of application to Financial Institution A for PPP loan in the name of **Lex Luxuries Beauty** |

| COUNT | DEFENDANT(S) | APPROX. DATE | WIRE/ACT |
|---|---|---|---|
| 5 | GEORGE ROWE | 03/01/2021 | Submission of application to Financial Institution A for PPP loan in the name of **Buckeye One Stop Shop LLC** |
| 6 | GEORGE, HOWARD | 04/26/2021 | Submission of application to Financial Institution A for PPP loan in the name of **J Howard Landscaping** |
| 7 | GEORGE, JACKSON | 04/27/2021 | Submission of application to Financial Institution A for PPP loan in the name of **Marty Cleaning Company** |
| 8 | GEORGE | 05/14/2021 | Submission of application to Financial Institution A for PPP loan in the name of **Put On Boyz Entertainment LLC** |
| 9 | GEORGE | 05/14/2021 | Submission of application to Financial Institution A for PPP loan in the name of **Streets Wear LLC** |

## FORFEITURE ALLEGATION A

34. The allegations of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America.

35. Upon conviction of one or more of the offenses alleged in this Indictment in violation of 18 U.S.C. § 1343 and/or 18 U.S.C. § 1349, the Defendant, **ALEXIS GEORGE, aka "Lex,"** shall forfeit to the United States, in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and/or 18 U.S.C. § 982(a)(2), any property constituting, or derived from, proceeds traceable to, or obtained, directly or indirectly, as a result of such violation, including, but not limited to a sum of money equal to $97,262.50 in United States currency.

36. Substitute Assets: If, as a result of any act or omission of the Defendant, any of the forfeitable property described above:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of **GEORGE** up to the value of the forfeitable property.

**Forfeiture notice in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(2), and Rule 32.2 of the Federal Rules of Criminal Procedure.**

## FORFEITURE ALLEGATION B

37. The allegations of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America.

38. Upon conviction of one or more of the offenses alleged in this Indictment in violation of 18 U.S.C. § 1343 and/or 18 U.S.C. § 1349, the Defendant, **LARRY ROWE, aka "Black,"** shall forfeit to the United States, in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and/or 18 U.S.C. § 982(a)(2), any property constituting, or derived from, proceeds traceable to, or obtained, directly or indirectly, as a result of such violation, including, but not limited to a sum of money equal to $35,500.00 in United States currency.

39. Substitute Assets: If, as a result of any act or omission of the Defendant, any of the forfeitable property described above:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

  c.  has been placed beyond the jurisdiction of the court;

  d.  has been substantially diminished in value; or

  e.  has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of **ROWE** up to the value of the forfeitable property.

**Forfeiture notice in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(2), and Rule 32.2 of the Federal Rules of Criminal Procedure.**

## FORFEITURE ALLEGATION C

40. The allegations of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America.

41. Upon conviction of one or more of the offenses alleged in this Indictment in violation of 18 U.S.C. § 1343 and/or 18 U.S.C. § 1349, the Defendant, **JERMAINE HOWARD**, shall forfeit to the United States, in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and/or 18 U.S.C. § 982(a)(2), any property constituting, or derived from, proceeds traceable to, or obtained, directly or indirectly, as a result of such violation, including, but not limited to a sum of money equal to $20,520.00 in United States currency.

42. Substitute Assets: If, as a result of any act or omission of the Defendant, any of the forfeitable property described above:

  a.  cannot be located upon the exercise of due diligence;

  b.  has been transferred or sold to, or deposited with, a third party;

  c.  has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of **HOWARD** up to the value of the forfeitable property.

**Forfeiture notice in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(2), and Rule 32.2 of the Federal Rules of Criminal Procedure.**

## FORFEITURE ALLEGATION D

43.    The allegations of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America.

44.    Upon conviction of one or more of the offenses alleged in this Indictment in violation of 18 U.S.C. § 1343 and/or 18 U.S.C. § 1349, the Defendant, **MARTEZ JACKSON**, shall forfeit to the United States, in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and/or 18 U.S.C. § 982(a)(2), any property constituting, or derived from, proceeds traceable to, or obtained, directly or indirectly, as a result of such violation, including, but not limited to a sum of money equal to $20,833.00.

45.    Substitute Assets: If, as a result of any act or omission of the Defendant, any of the forfeitable property described above:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of **JACKSON** up to the value of the forfeitable property.

**Forfeiture notice in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(2), and Rule 32.2 of the Federal Rules of Criminal Procedure.**

A True Bill.

s/Foreperson
GRAND JURY FOREPERSON

KENNETH L. PARKER
UNITED STATES ATTORNEY

*[signature]*
ELIZABETH A. GERAGHTY (0072275)
Assistant United States Attorney

*[signature]*
S. COURTER SHIMEALL (0090514)
Assistant United States Attorney

15